(17 Misc. Rep. 584)

## WHEATFIELD v. BEAL.

(Supreme Court, Appellate Term, First Department. July 27, 1896.)

CONTRACTS—WAIVER OF PROVISIONS.

     Defendant, an insurance agent, employed plaintiff to solicit insurance on commission; the contract providing that the commission should accrue only as premiums should be paid in cash, and that under no circumstances should plaintiff allow a policy to leave his possession without payment of the premium. Plaintiff procured an application from one H., and the policy was delivered to H. by plaintiff. The premium was not paid at the time, because H. wished to change the policy. This was reported to defendant, who, without objecting to the nonpayment of the premium, agreed to make the change, and thereupon the policy was returned to him. H. was again examined by the medical examiner, and rejected, and the company refused to return the policy issued. There was evidence that, on a few previous occasions, plaintiff delivered policies without collecting the premiums. *Held*, that the evidence did not show a waiver by defendant of the condition as to payment of premiums. 39 N. Y. Supp. 834, reversed.

Appeal from city court of New York, general term.

Action by Jacob H. Wheatfield against Byron A. Beal to recover $375 and interest, commissions for procuring a policy of insurance on the life of one David Haas. A judgment in favor of plaintiff was affirmed by the city court (39 N. Y. Supp. 834), and defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Alexander & Green (Allan McCulloh, of counsel), for appellant.

Secor & Page (Horace Secor, Jr., of counsel), for respondent.

McADAM, J. The defendant, an insurance agent, by agreement dated August 9, 1893, appointed the plaintiff his subagent to canvass for applications of insurance, and to forward the same to the Equitable Life Assurance Society, it being provided that:

"If the risks are approved and policies issued by the said society, the said party of the second part [the plaintiff] shall collect and forthwith pay over to the said party of the first part [the defendant] the premiums on assurances thus effected, unless otherwise directed by the said society."

It was further provided that:

"Brokerages shall accrue only as the premiums are paid in cash to said party of the first part or said society. No policy or premium receipt shall be considered as settled for, nor shall any risk be assumed thereunder by said society, unless the premium shall have been paid in cash to said society. * * * Under no circumstances whatever shall said party of the second part allow a policy of assurance to leave his possession unless the first premium shall have been duly settled, except to return the policy to said party of the first part or said society. * * * The said party of the second part shall have no claim against said party of the first part or said society for brokerages, or any other claim whatever, under this contract not herein specifically authorized."

Plaintiff sued on this agreement to recover commissions claimed to have been earned by him upon a policy of assurance in the form of a 20-years indemnity bond alleged to have been procured by him, and issued by the Equitable Life Assurance Society of the United States, upon the life of one David Haas. Haas was examined by

the society's physician, and accepted. The bond was written, and received by the plaintiff, and delivered to Haas, who did not pay the premium. Subsequently, Haas changed his mind, and desired an endowment policy. He surrendered the bond, was re-examined for the endowment policy, and rejected. The bond was retained by the society, to which it was surrendered, and it refused to issue any new obligation. As the premium on the obligation was not paid, it is apparent that there can be no recovery by the plaintiff, unless the defendant has by some act of his, irrespective of the question of premium, made himself liable. The plaintiff succeeded in the court below on the theory that the defendant refused to return the bond after the rejection of Haas on the second examination, because the applicant was "growing too fast," and that thereby the defendant waived tender of the premium, which might have been paid then and there if defendant had placed his refusal to deliver the bond on the ground of nonpayment of premium.

The facts may be summarized as follows: David Haas, a young man, 18 years of age, made application for one form of policy, was examined, and a policy was written and delivered to him by plaintiff, but no premium paid or offered to be paid. Subsequently, the applicant changed his mind, and desired a different form of policy. He consented to a surrender of the first policy, surrendered it, was examined for a different character of insurance, and rejected. The society refused to reissue the first policy, or make a new one. Finding he could not get the endowment policy, Haas concluded to repossess himself of the indemnity bond, but he was too late.

The applicant intended that the first policy be returned to the society, and for that purpose it was given to the defendant, who gave it to the policy clerk of the society; and the defendant could not get it back, because the society refused to reissue it. He failed to comply with the demand to return the policy, not because Haas·was growing too fast, but for the reason that the society acted on the surrender of the policy by retaining it, thereby making it impossible for the defendant to return it. The society had a right to refuse to issue an endowment policy, and the defendant could not compel it to issue one, for he had no control over its action in that regard. The defendant employed the plaintiff to solicit applications for insurance, and was himself employed by the society for that purpose. He submitted all applications to his employer, which acted upon them as it saw fit, accepting or rejecting at its pleasure, —a course of business as well understood by the plaintiff as by the defendant. Under such circumstances, the defendant was guilty of no breach of duty to the plaintiff, and did nothing which justifies a recovery against him for brokerage on moneys which never reached his hands, and which, upon the facts disclosed, never can.

The only evidence of waiver is that on a few previous occasions the plaintiff delivered policies without collecting the premium, and afterwards collected the money, or paid it "out of his own pocket"; and from this it is argued the plaintiff might extend a short credit to his customers. Assuming this to be so, and that the delivery of the bond to Haas was with the acquiescence of the defendant, there

is nothing in either circumstance which estopped the society as to its course of dealing with applicants or policy holders, or waived, even as to the defendant, the special provision of the contract that the plaintiff's right to brokerage should in no case attach until the premium was first actually paid to defendant or to the society. Haas knew, when he directed that the first policy be surrendered to the society, that it might act on the surrender, and keep the policy as an inoperative instrument. He knew also, when he submitted to the second medical examination, that the society was under no obligation to accept him as a suitable person for an endowment policy, but was at liberty to reject his application; and he had no right to expect, much less demand, that the society would conform to his changeable notions respecting the kind of insurance he desired. The remark attributed to the defendant as an excuse for not delivering the policy, that the plaintiff was "growing too fast," was simply assigned by him as the reason why the society had rejected the second application, and had reference to nothing else. The defendant could not have delivered the policy to the plaintiff or to Haas at the time it was demanded even if he had desired to do so, whether the premium thereon was paid or not, for the unanswerable reason that the insurer had, agreeably to Haas' desire, accepted the surrender, and thereafter declined to reissue it. And trover would not lie against the defendant for refusal to deliver the policy, for such refusal was not in itself conversion. In a proper case it would only be evidence of it, and a defendant is always at liberty to show lawful reasons for not complying with a demand made, such as inability to comply arising from no fault of his. Andrews v. Shattuck, 32 Barb. 396; McClellan v. Wyatt (City Ct. N. Y.) 11 N. Y. Supp. 686.

At the trial, the defendant and the society were treated as if one and the same person, instead of two entirely different entities; and its acts were attributed to him, as if he was responsible for its part in the transaction. We fail to discover any legal ground upon which the recovery had can be sustained.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.